IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| ANTHONY A. GAZVODA | ) | |
| | ) | |
| Plaintiff, | ) | Case No: 2:15-cv-14099 |
| | ) | |
| v. | ) | |
| | ) | |
| JEH JOHNSON, in his official capacity as | ) | |
| Secretary, of the Department of Homeland | ) | |
| Security; R. GIL KERLIKOWSKE, in his | ) | |
| Official capacity as Commissioner of U.S. | ) | |
| Customs and Border Protection | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____/ | | |

NYMAN TURKISH PC
Ryan T. Kaiser (P79491)
Jason M. Turkish (P76310)
20700 Civic Center Drive, Suite 115
Southfield, MI 48076
Phone: (248) 284-2480
Fax: (248) 262-5024
Ryan.Kaiser@NymanTurkish.com
Jason.Turkish@NymanTurkish.com

*Attorneys for Plaintiff*

---

**VERIFIED COMPLAINT**

Plaintiff Anthony Gazvoda herby sues The Department of Homeland

Security ("DHS") and United States Customs and Border Protection ("CBP"),

and states as follows:

## INTRODUCTION

1. Plaintiff brings this action to vindicate his federally protected rights under the Rehabilitation Act of 1973 ("Rehab Act"), after Defendant inexplicably and wrongfully denied his request for reasonable accommodations, requiring him to return to a work environment, which is not suited to his disability, and which will cause him grave mental and physical injury.

2. Plaintiff is a veteran who served in Afghanistan, and was subsequently diagnosed with Post Traumatic Stress Disorder ("PTSD").

3. Plaintiff is a hard-working, dedicated border patrol agent whose only request is to be stationed in Michigan, along the northern border, which is free of environmental triggers, which exacerbate his PTSD, as opposed to his previous location in Laredo, TX.

4. Defendant's denial of Plaintiff's request for accommodation is unreasonable and in violation of Section 501 of the Rehab Act.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331, because Plaintiff's claims arise under federal statutes, specifically Section 501 of the Rehabilitation Act of 1973.

6. Venue is proper in the Eastern District of Michigan, because Plaintiff resides in the Eastern District, and Defendant is subject to the Court's personal

jurisdiction pursuant to 28 U.S.C. 1391, and because the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## PARTIES

7. Plaintiff Anthony A. Gazvoda, an American war veteran, is an individual residing in Crawford County, MI.

    a. Plaintiff first applied for employment with Defendant CBP in 2008, but had to delay working with Defendant CBP because in 2009 he was deployed to Afghanistan.

    b. Upon returning from duty, Plaintiff began working with Defendant CBP as a Border Patrol Agent.

8. Plaintiff has standing to bring the present cause of action.

    a. Plaintiff is disabled according to the definition provided by the ADA (the standard imposed on Section 501 claims) because he suffers from a "mental impairment that substantially limits one or more major life activities." 29 U.S.C. § 705; 42 U.S.C. 12101.

    b. Plaintiff requested a reasonable accommodation, which has been wrongfully denied by the Defendants.

9. Defendant DHS is a federal government agency.

10. Defendant CBP is a subdivision of Defendant DHS, charged with securing the borders of the United States.

## FACTUAL ALLEGATIONS

11. In 2008, Plaintiff applied for a position with Defendant CBP, but was forced to delay the application process when he was deployed to Afghanistan in 2009.

12. Plaintiff served in combat in Afghanistan from January 2009 to November 2009.

13. Upon returning from war, Plaintiff resumed the application process with Defendant CBP.

14. Immediately upon his return, Plaintiff experienced trouble sleeping. He sought help, and began seeing a counselor. By May of 2010, as a result of proactive counseling, Plaintiff was free of sleep issues.

15. Plaintiff began employment with Defendant CBP on or around September 11, 2010.

16. After approximately five months of training in New Mexico with Defendant CBP, Plaintiff was stationed in Laredo, TX in February, 2011.

17. By April, 2011, Plaintiff began experiencing insomnia, anxiety, depression, and panic attacks.

18. Plaintiff sought help through the Veteran's Administration (VA) in Laredo, TX, but he was not able to obtain help or benefits.

19. As Plaintiff began experiencing more severe symptoms, he left Laredo, TX on unpaid administrative leave, to seek assistance at the VA in Grayling, MI.

20. At some point, Defendant CBP incorrectly listed Plaintiff as Absent Without Leave ("AWOL"), despite his having requested leave due to his ongoing mental health issues.

    a. Plaintiff vehemently worked with officials of Defendant CBP to correct his AWOL status, but Defendant CBP continuously ignored Plaintiff's telephone calls and emails.

    b. Eventually, Defendant CBP retroactively changed Plaintiff's AWOL status, and transitioned him to paid administrative leave while he sought mental healthcare.

    c. Plaintiff has been on paid administrative leave since Defendant CBP retroactively removed his AWOL status.

21. Plaintiff sought help with several mental health professionals through the VA, and was diagnosed with Post Traumatic Stress Disorder ("PTSD").

22. Each mental health professional opined that Plaintiff is fully capable of fulfilling the job duties of a border patrol agent, but that being stationed in Laredo, TX significantly exacerbates symptoms of PTSD, because of the environmental similarities with his station and combat location in Afghanistan.

23. Based on the recommendations of his treating physicians, Plaintiff requested that he be stationed in a less densely populated location, specifically, Sault Ste. Marie, MI.

24. Each of Plaintiff's treating mental health professionals urged Defendant CBP to station Plaintiff in a more favorable location than Laredo, TX.

   a. Dr. Kirk Swabash, a board certified psychologist with the VA, wrote to the Office of Diversity and Civil Rights urging them to grant Plaintiff's requested accommodation. Dr. Swabash stated that the requested accommodations would "allow Mr. Gazvoda to perform the essential functioning of his position." Furthermore, Dr. Swabash expressed that being stationed in Michigan would be beneficial because it would allow Plaintiff to be stationed "near his treating VA office." **(Exhibit A, Accommodation Letter from Dr. Kirk Swabaah).**

   b. Dr. Swabash drafted a second letter in which he indicated "[Plaintiff] had experiences outside the realm of usual human experiences and developed classic symptoms of PTSD." "In my opinion clear relationship between job location […] and exacerbation of his symptoms." **(Exhibit B, Accommodation Letter from Dr. Kirk Swabash).**

c. Dr. Robert Barger, a board certified psychologist, also provided a letter
for Plaintiff regarding his request for accommodations, stating "[i]t is
my opinion that this request of transfer to the Northern environment
would be extremely beneficial and appropriate." **(Exhibit C,
Accommodation Letter from Dr. Robert Barger).** Dr. Barger's
report stated that Dr. Barger "would support hardship transfer back to
northern area where there are less environmental triggers." **(Exhibit C).**

d. Plaintiff also sought treatment with John Haskin, a PhD psychologist,
who opined that "Mr. Gazvoda may be able to return to his job as a
border patrol officer he should only work in settings in which as few
similarities as he faced in Afghanistan as is possible. If he is to function
in this capacity, he will need a compassionate transfer from Laredo to
as dissimilar a setting as possible. We would not recommend any
setting on the Mexican border." **(Exhibit D, Report of John Haskin,
PhD).** This information was submitted to Defendant CBP.

e. Plaintiff also sought treatment with Dr. Martin Vandenakker, D.O., who
opined that "living in the city, around areas that were not familiar, his
sleep cycle being off, and hearing people speaking foreign language
had impacted his symptoms." **(Exhibit E, Report of Dr. Martin
Vandenakker).** This information was submitted to Defendant CBP.

25. In addition to the opinions of his treating psychiatrists and psychologist, Plaintiff has a 70% VA Disability Rating, 50% of which is based on PTSD.

26. On October 5, 2015, Defendant CBP sent Plaintiff to an Independent Medical Examination ("IME"), with a psychiatrist named Dr. Craig Lemmen, MD. Strangely, Dr. Lemmen specializes in Forensic Psychiatry and Pediatric Psychiatry, but does not hold himself out as working with veterans or individuals with PTSD.

    a. Plaintiff felt uncomfortable during this evaluation, noticing that the IME did not appear to have any experience with veterans suffering from PTSD.

    b. Plaintiff has since diligently worked to obtain the IME's report, but Defendant CBP has been uncooperative.

27. On November 16, 2015, Plaintiff was informed by Defendant CBP that his request for reasonable accommodation had been denied. Defendant CBP indicated that Plaintiff would be able to fulfill his duties in Laredo, TX, based solely on the opinion of Dr. Craig Lemmen. Plaintiff was ordered to return to work in Laredo, TX by November 23, 2015 at 8 A.M. or he would be listed as AWOL. **(Exhibit F, Accommodation Denial Letter).**

28. Following receipt of this letter, Plaintiff began experiencing symptoms of PTSD, symptoms which, as of late, had largely been under control as a result of medication and treatment.

29. As the week progressed, Plaintiff's symptoms became more severe, until Friday November 20, 2015, when he began experiencing chest pains.

30. On November 20, 2015, Plaintiff sought emergency treatment at Mid-Michigan Medical Center ("MMC") in Midland, MI.

31. The treating physician at MMC ordered that Plaintiff not travel or return to work until he had undergone a stress test. **(Exhibit G, Doctor Recommendation).**

32. Plaintiff submitted this information to Defendant CBP, who informed Plaintiff that the note was not sufficient and he would still be required to return to Laredo, TX on November 23, 2015, or he would be listed as AWOL.

33. This situation has caused Plaintiff severe emotional distress, anxiety, and chest pain, and he is not mentally, emotionally, or physically capable of relocating to Laredo, TX by Monday November 23, 2015.

## <u>COUNT I</u>

## **VIOLATIONS OF SECTION 501 OF THE REHABILITATION ACT OF 1973 AS AMENDED**

34. Plaintiff incorporates by reference all of the allegations contained in paragraphs 1 through 33, inclusively.

35. The stated purpose of the Rehab Act is "to empower individuals with disabilities to maximize employment, economic self-sufficiency, independence, and inclusion and integration into society." 29 U.S.C. § 701.

36. Section 501 of the Rehabilitation Act prohibits discrimination in employment, based on the standards governing Title I of the Americans with Disabilities Act ("ADA"). 29 U.S.C. § 791(f).

37. Title I of the ADA provides that no entity "shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

38. For purposes of Title I of the ADA and Section 501 of the Rehab Act, discrimination is defined as "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

39. Plaintiff has requested reasonable accommodations in the form of being stationed at a border location that does not severely exacerbate his PTSD, the way being stationed in Laredo, TX did.

40. Plaintiff provided Defendant CBP with a plethora of medical records and documentation, all of which support his status as a qualified person with a disability, and opining that granting the requested accommodation would fully allow him to complete the duties of the job.

41. Defendant wrongfully and inexplicably denied this request for accommodations, basing their decision solely on the opinion of an unqualified independent medical expert.

42. By denying Plaintiff's request for accommodations, Defendant has discriminated against Plaintiff, in violation of Title I of the ADA, and accordingly, has violated Section 501 of the Rehab Act.

43. Defendants' actions have caused irreparable harm, and an injunction ordering Defendants to grant the accommodation requested by Plaintiff should be issued, as Plaintiff does not have an adequate remedy at law.

WHEREFORE, Plaintiff requests the relief set forth below.

## **PRAYER FOR RELIEF**

44. A declaration that Defendants' course of action has unlawfully violated Plaintiff's rights under Section 501 of the Rehabilitation Act of 1973.

45. An injunction preventing Defendants from ordering Plaintiff to return to Laredo, TX against medical advice, which will cause severe mental and physical injury.

46. A further injunction requiring Defendants to grant the requested accommodation.

47. Reasonable Attorney's fees and costs for the prosecution of this matter.

48. Although Plaintiff does not specifically request damages at this time, he reserves the right to amend his Complaint in the future to add such a request, if it becomes necessary to compel Defendants to comply with federal law.

49. All other relief that this Honorable Court deems just and proper.

Respectfully submitted,

NYMAN TURKISH PC

/s/ Ryan T. Kaiser
Ryan T. Kaiser (P79491)
Jason M. Turkish (P76310)
20700 Civic Center Drive, Suite 115
Southfield, MI 48076
Phone: (248)284-2480
Fax: (248) 262-5024
Ryan.Kaiser@NymanTurkish.com
Jason.Turkish@NymanTurkish.com

Dated: November 21, 2015                 *Attorneys for Plaintiff*

## VERIFICATION

Anthony Gazvoda, under penalty of perjury of the laws of the United States, states: That he is the named Plaintiff in the above-styled Verified Complaint, that he has read, is familiar with, and has personal knowledge of the contents of the foregoing Verified Complaint, and that to the best of his knowledge, information, and belief the allegations thereof are true and correct.

_____
Anthony Gazvoda

Subscribed and sworn before me this
_21st_ Day of November, 2015

_____
Notary Public

Nancy L. Bindschatel, Notary Public
State of Michigan, County of Crawford
My Commission Expires 1/6/2019
Acting in the County of Crawford