UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ANTHONY A. GAZVODA,

                Plaintiff,                        Case No. 15-cv-14099

v.                                                 Honorable Thomas L. Ludington

SECRETARY OF HOMELAND SECURITY, and
COMMISSIONER OF UNITED STATES
CUSTOMS AND BORDER PROTECTION,

                Defendants.

_____/

**ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER,
DIRECTING SERVICE, SCHEDULING PRELIMINARY INJUNCTION HEARING,
DIRECTING APPEARANCE, AND DIRECTING FILING**

      Plaintiff Anthony A. Gazvoda filed a verified complaint against Defendants Jeh Johnson, Secretary of the Department of Homeland Security, and R. Gil Kerlikowske, Commissioner of U.S. Customs and Border Protection, on November 22, 2015. *See* Pl.'s Compl., ECF No. 1. He has sued both the Secretary and the Commissioner in their official capacities. He alleges that the Defendants have not accommodated his disability in accordance with the Rehabilitation Act of 1973, *see* 29 U.S.C. § 794(a).

      Gazvoda has moved for injunctive relief against Defendants. Gazvoda has titled his motion "Plaintiff Anthony A. Gazvoda's Ex Parte Motion for Temporary Restraining Order and/or Motion for Preliminary Injunction." *See* Pl.'s Mot., ECF No. 2. Because the motion was filed ex parte, however, and Gazvoda desires it to be heard ex parte, only the request for a temporary restraining order may be considered. *See* Fed. R. Civ. P. 65 (limiting any ex parte relief available to a temporary restraining order).

**I.**

Plaintiff Anthony Gazvoda is a veteran of the Afghanistan War and is currently on medical leave from his job as a United States Customs and Border Patrol Officer. Defendants are the lead Government officials in charge of the Department of Homeland Security ("DHS") and the United States Customs and Border Protection Agency ("CBP"). The CBP is a subdivision of DHS and is "charged with securing the borders of the United States." Pl.'s Compl. ¶ 10, ECF No. 1.

**A.**

Gazvoda was deployed to Afghanistan in January 2009. He served in combat there from January to November 2009. While in combat Gazvoda was engaged in numerous firefights and was tasked, along with his team, with clearing a number of improvised explosive devices. During his time in combat, Gazvoda witnessed a number of gruesome and unsettling injuries to individuals with whom he served closely.

Upon return from combat, Gazvoda immediately experienced difficulty sleeping. He sought help and, by May 2010, was free of his sleep issues. "Gazvoda began employment with Defendant CBP on or about September 11, 2010." Id. at ¶ 15. Gazvoda trained for approximately five months in New Mexico at the conclusion of which, in February 2011, he was stationed at a CBP post in Laredo, Texas.

**B.**

After two months of being stationed in Laredo, Gazvoda "began experiencing insomnia, anxiety, depression, and panic attacks." *Id*. at ¶ 17. He sought help and benefits from the Veterans Affairs ("VA") in Laredo, but to no avail. His symptoms gradually increased and he

was forced to leave Laredo and take unpaid administrative leave. He sought assistance at the VA hospital in Grayling, Michigan.

During the time after Gazvoda went on unpaid administrative leave, CBP classified him as Absent Without Leave (AWOL). Gazvoda contested this classification since his leave was due to ongoing mental health issues. CBP then retroactively transitioned Gazvoda to paid administrative leave status. He has been on paid administrative leave status (retroactively for a period) since leaving Laredo.

## C.

Upon coming to Michigan and seeking help at the Grayling VA hospital, Gazvoda consulted with a number of mental health professionals. Eventually, he was diagnosed with posttraumatic stress disorder ("PTSD"). The medical professionals that analyzed Gazvoda concluded that the environment of Laredo was too similar to the environment of Afghanistan, the trigger-point for Gazvoda's PTSD. Specifically, the presence of dark-skinned individuals that spoke a foreign language aroused painful and unpleasant memories from when Gazvoda was deployed. The doctors also recommended against placing Gazvoda in a densely populated city. None of the doctors opined on any dissimilarities between individuals of Hispanic or Latino ethnicity and individuals of Arab, Middle-Eastern, or South Asian ethnicity. Nor did the doctors opine on Gazvoda's apparent ability to understand the Spanish language and whether he could understand any of the indigenous languages spoken in Afghanistan along the Pakistan border, where he was deployed. Nevertheless, all of the doctors Gazvoda sought out concluded that he should not, at a minimum, be stationed in Laredo if he is to see any improvement in his condition and be able to function as a Border Patrol Officer. All of the doctors supported a compassionate

transfer to a northern environment where individuals are of fairer complexion and are more comfortable conversing in American English.

Gazvoda initially received his diagnosis of PTSD in 2012, but one of his examiners noted that his condition was chronic and severe and likely to persist into the foreseeable future. *See* Report of John Haskin, Pl.'s Compl., Ex. D, ECF No. 1-5. Accordingly, Gazvoda has been evaluated as recently as May 19, 2015[1] by a Board Certified Psychiatrist that does not recommend that he return to Laredo. *See* May 19, 2015 Letter from Dr. Kirk Swabash, Pl.'s Compl., Ex. B, ECF No. 1-3. The conclusions and opinions of the medical professionals that evaluated Gazvoda were communicated to Defendants in support of his request for a transfer to a northern border station. Gazvoda specifically requested that he be transferred to a station in Sault Ste. Marie, Michigan. The only reason for this request that Gazvoda provides is that it is near his treating mental health care providers in Grayling. But Gazvoda does not offer any explanation for why he sought out doctors in Grayling, Michigan, in the first instance.

**D.**

Despite communicating the opinions of his evaluating doctors to Defendants, CBP directed Gazvoda to attend an Independent Medical Evaluation ("IME"). Gazvoda believes that the psychiatrist who conducted the IME has little or no experience with PTSD or working with veterans. As a result, Gazvoda felt uncomfortable throughout the evaluation.

Gazvoda has attempted to obtain the report of the IME, but has been unable to do so. He does not explain the steps he has taken to obtain the report, however, merely that CBP has been uncooperative.

---

[1] There is also a letter presented by Plaintiff that bears a facsimile timestamp from May 26, 2015. But since the letter itself is undated, it is not possible to conclude whether the opinions predate or postdate the opinions in the letter dated May 19, 2015.

On November 16, 2015, Gazvoda received a letter from CBP informing him that his accommodation request had been denied. *See* November 16, 2015 CBP Letter, Ex. F, ECF No. 1-7. Furthermore, the IME concluded that Gazvoda was not disabled and was capable of working at the Laredo border station without accommodation. Gazvoda was directed

> . . . to report directly to Jerry Doyal, Deputy Patrol Agent in Charge of the Laredo North Station on Monday, November 23, 2015 at 8:00 a.m. at the Laredo North Station in Laredo, Texas, where you will transition into the full range and scope of a Border Patrol Agent over a period not expected to last more than four weeks.

*Id*. Gazvoda was further cautioned that "failure to report to the Laredo North Station as directed above may result in your placement on Absent Without Leave (AWOL). Please be advised that being AWOL and/or your failure to report to duty may result in disciplinary action up to and including removal from Federal employment." *Id*.

After receiving this notice, Gazvoda's PTSD symptoms began anew, despite having "largely been under control as a result of medication and treatment." Pl.'s Compl. ¶ 28, ECF No. 1. His symptoms became increasingly severe to the point that he "sought emergency treatment at Mid-Michigan Medical Center" in Midland, Michigan on November 20, 2015. Id. at ¶ 29-30. The physician that treated Gazvoda signed a work release form ordering that Gazvoda could not travel or undergo strenuous activity until he was cleared by a physician. See Work Release Form, Ex. G, ECF No. 1-8. Gazvoda provided this form to CBP and was informed that it was insufficient. CBP told him that he would still need to report to Laredo by 8:00 a.m. on November 23, 2015 or he would be listed as AWOL. Pl.'s Compl. ¶ 32, ECF No. 1. Gazvoda alleges that "[t]his situation has caused Plaintiff severe emotional distress, anxiety, and chest pain, and he is not mentally, emotionally, or physically capable of relocating to Laredo, TX by Monday November 23, 2015." *Id*. at ¶ 33. Gazvoda does not represent that he did indeed report to Laredo

on Monday November 23, 2015. He filed his request for a temporary restraining order at 7:30 p.m. on Sunday November 22, 2015.

## II.

Federal Rule of Civil Procedure 65 provides that a "court may issue a [TRO] without written or oral notice to the adverse party or its attorney" if two requirements are satisfied: (1) "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition"; and (2) "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1).

Four factors govern whether the Court will issue a TRO (the same four factors governing whether to issue a preliminary injunction): (1) whether the plaintiff has demonstrated a substantial likelihood of success on the merits; (2) whether there is a threat of irreparable harm to the plaintiff; (3) whether issuance of the injunction would harm others; and (4) whether the public interest is served by granting injunctive relief. *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 649 (6th Cir. 2007) (citation omitted); *see also Ne. Ohio Coal. for Homeless and Serv. Emps. Intern. Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006). "These factors are not prerequisites, but are factors that are to be balanced against each other." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citations omitted).

## III.

Although each of the factors need not be conclusively found to favor the issuance or denial of injunctive relief, each will be analyzed in turn. Gazvoda argues that all four TRO factors support the issuance of emergency injunctive relief.

**A.**

First, Gazvoda contends that he will likely succeed on the merits. *Hamilton's Bogarts, Inc.*, 501 F.3d at 649 (describing the first inquiry as "whether the plaintiff has established a substantial likelihood or probability of success on the merits"). He argues that Defendants refusal to accommodate his psychological disability violates Section 501 of the Rehabilitation Act. *See* 29 U.S.C. § 794(a). Claims brought under the Rehabilitation Act's anti-disability discrimination provisions are analyzed under the standards applied to discrimination claims under the Americans with Disabilities Act. *See* 29 U.S.C. § 791(f).

Gazvoda's claim alleges that Defendants did not reasonably accommodate his disability. This is a claim involving direct evidence of discrimination. *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007). The following framework applies to claims involving direct evidence:

> (1) The plaintiff bears the burden of establishing that he or she is disabled. (2) The plaintiff bears the burden of establishing that he or she is "otherwise qualified" for the position despite his or her disability: (a) without accommodation from the employer; (b) with an alleged "essential" job requirement eliminated; or (c) with a proposed reasonable accommodation. (3) The employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer.

*Id*. at 869 (quoting *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 452 (6th Cir. 2004)).

**1.**

Gazvoda claims that he is disabled as defined by the ADA and the Rehabilitation act "because he suffers from 'a physical or mental impairment that substantially limits one or more major life activities.'" *See* Pl.'s Mot. TRO 18, ECF No. 2 (quoting 42 U.S.C. § 12101(1)(A)). He also claims that "he suffers from 'a physical or mental impairment that constitutes or results in a substantial impediment to employment.'" *Id*. (quoting 29 U.S.C. § 705(9)(A)). In support of this

claim Gazvoda includes the reports of numerous licensed medical professionals that reach the conclusion that, for various reasons, Gazvoda cannot presently return to work in Laredo, Texas as a Border Patrol Officer. The primary piece of evidence supporting Gazvoda's claim of disability is a twelve-page report for Dr. John Haskin, who has a Ph.D. in Psychology. *See id.* at Ex. D. Dr. Haskin concluded that Gazvoda is suffering from chronic and severe posttraumatic stress disorder ("PTSD") that severely impairs his "psychological, social, and occupational mental health (or illness) functioning." *Id.* at Ex. D 10-11, ECF No. 2-5. Dr. Haskin's report was issued on March 8, 2012.

But Gazvoda also provides more recent evaluations that attest to his disability being continuing and limiting his ability to work as a Border Patrol Officer in Laredo. This evidence includes two letters from Dr. Kirk Swabash, a Board Certified Psychiatrist.[2] Both letters explain that Gazvoda continues to suffer from the symptoms of PTSD and that those symptoms would be exacerbated by the working conditions present in Laredo. *See id.* at Exs. A & B. Dr. Swabash maintains in his letters that he supports a hardship transfer to the north, away from an assignment to Laredo or any other Customs post along the Mexico border. *Id.*

Reports from certified medical doctors or other equally credentialed experts are not necessarily dispositive of disability, particularly where reports support different conclusions concerning disability. But where reports support a single conclusion, they may establish at least a triable issue of fact as to disability. *See Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1107 (6th Cir. 2008). For the purposes of Gazvoda's current motion for temporary injunctive relief it will be assumed that he sufficiently establishes that he is disabled.

**2.**

---

[2] One letter is dated May 19, 2015. *See id.* at Ex. B. The other letter is undated but includes a facsimile stamp of May 29, 2015. *See id.* at Ex. A.

Upon proving disability, Gazvoda bears an additional burden. Under the "failure to accommodate" framework, Gazvoda must demonstrate that "he . . . is 'otherwise qualified' for the position despite his . . . disability . . . with a proposed reasonable accommodation." *Kleiber*, 485 F.3d at 869. This element requires two showings: that Gazvoda is qualified for the position he seeks and that the accommodation he seeks is reasonable. Gazvoda argues that he readily meets this burden because his doctors have attested to the fact that he can perform his duties as long as he is not stationed along the Mexico border. *See* Pl.'s Mot. TRO 18-19, ECF No. 2.

Further, he claims his accommodation is reasonable because all he asks is for a post assignment along any non-Mexico border. Gazvoda explains the reasonableness of his accommodation thusly:

> Defendant DHS is a major federal agency. Defendant CBP is a division of Defendant DHS, charged with securing the nation's borders. Defendant CBP stations border patrol agents from coast-to-coast, and border-to-border. Plaintiff's request, is reasonable considering the massive budget, size, and responsibilities of Defendant DHS. Defendant CBP currently employs more than 20,000 border patrol agents. The relocation of one agent, who is a veteran whose battle with PTSD is significantly exacerbated by his stationing in Laredo, TX, is unlikely to have any impact on either of Defendants' operations, let alone unduly burden them. Furthermore, the medical evidence suggests that if Plaintiff is fully able to do the work of a border patrol agent, he must have the accommodation he has requested.

*Id*. at 19 (internal citations omitted). In support of his claim that Defendants' sheer size means placing him in another location is not an undue burden, Gazvoda cites *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391 (2002). But that case is unhelpful if meant to support that proposition. In *U.S. Airways* the Supreme Court held that a seniority system does not per se render an accommodation that would violate that system unreasonable. The case does not hold that the sheer size of an organization makes any proposed transfer reasonable. To the Court's knowledge, no case so holds.

In fact, certain proofs are necessary from a plaintiff alleging a failure to accommodate and those proofs go beyond mere reliance on an organization's size. In fact, the ADA defines "reasonable accommodation" as "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9). Thus, before Gazvoda can stake a claim to a position other than the one to which he has been assigned and declare such a move a reasonable accommodation, he must demonstrate that there is a vacant, accommodating position. This showing is particularly important because "there is no requirement that an employer . . . create a new position in order to return a disabled employee to work." *Henschel v. Clare Cty. Rd. Comm'n*, 737 F.3d 1017, 1025 (6th Cir. 2013). Gazvoda offers no evidence that a position he seeks is actually open. Nor does he explain how the size of the Customs and Border Patrol—roughly 20,000 border patrol agents—means conclusively, without more, that a position is open for him to fill.

Gazvoda attempts to sidestep these concerns by noting that he "does not, at this preliminary state, ask the Court to order Defendants to grant the requested accommodation." Pl.'s Mot. TRO 19, ECF No. 2. But there is a reason that the test applied to requests for the extraordinary relief of an ex parte preliminary restraining order requires a showing of a likelihood of success on the merits. Disturbing the status quo for anything short of a substantial showing of success on the merits would needlessly, and without notice, impinge upon the legal rights of another in order to maintain a status quo that a plaintiff may not have any right to

maintain. That is, a plaintiff has little right to temporary relief if it is doubtful that he has right to identical permanent relief. Gazvoda must demonstrate more to secure the injunction he seeks.

**3.**

Lastly, if Gazvoda could meet his burden of demonstration under the ADA's direct-evidence framework, Defendants would "bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer. *Kleiber*, 485 F.3d at 869. Analysis of this prong under the likelihood of success on the merits prong of the TRO test is problematic for a number of reasons. First, the proceeding is ex parte, so the Court is in the particularly difficult position of speculating as to the evidence Defendants might possess in support of this burden. By reason, then, the two tests—that for obtaining ex parte preliminary injunctive relief and that for sustaining a failure-to-accommodate claim—are odd bedfellows. This is not to say that preliminary injunctive relief in cases of employment discrimination is always, even if often, inappropriate. *See, e.g.*, *Callicotte v. Carlucci*, 698 F. Supp. 944, 950 (D.D.C. 1988) (awarding preliminary injunctive relief and directing reinstatement in Rehabilitation Act discrimination case); *McElrath v. Kemp*, 714 F. Supp. 23, 29 (D.D.C. 1989) (same). Doing so ex parte, however, does not seem appropriate considering the requirement that the Court weigh the respective parties' positions when coming to conclusions on the relative merits of a plaintiff's case. Indeed, Gazvoda does not provide any authority, and the Court was unable to uncover any, where a plaintiff was provided an *ex parte* TRO based on a failure-to-accommodate claim.

Additionally, for reasons stated more fully below, Gazvoda's claim is not of the type where the extraordinary relief of a temporary restraining order is necessary to preserve his legal rights in advance of a hearing on the merits. While some expedited consideration may be

necessary, and preliminary injunctive relief may be forthcoming, ex parte temporary injunctive relief is not warranted at this time.

### B.

The second factor to consider when analyzing a request for a temporary restraining order is "whether there is a threat of irreparable harm to the plaintiff[.]" *Hamilton's Bogarts, Inc.*, 501 F.3d at 649. As Gazvoda acknowledges, harm "is irreparable if it is not fully compensable by monetary damages." *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002). That cannot be said to be the case here. While Gazvoda's circumstance is lamentable, it is not without recourse through law such that equity must be done. Gazvoda fears being ordered to report to Laredo where he will suffer irreparable mental and physical injury. And it is reasonable that such harm would result from Gazvoda reporting. But the evidence does not support that he has or will soon report to Laredo.

Gazvoda included with his complaint and his motion for a TRO a work release form from a doctor that stated "no travel or strenuous activity until cleared by a physician." Pl.'s Mot. TRO, EX. G, ECF No. 2-8. This note was signed on November 20, 2015. Gazvoda was ordered to report to Laredo by 8:00 a.m. on November 23, 2015 by a letter dated November 16, 2015. The letter notes that "failure to report to the Laredo North Station as directed above may result in your placement on Absent Without Leave (AWOL). Please be advised that being AWOL and/or your failure to report to duty may result in disciplinary action up to and including removal from Federal employment." *Id*. at Ex. F, ECF No. 2-7. The letter demonstrates that the most severe penalty that Gazvoda will suffer from not reporting for duty would be termination. If, however, Gazvoda believes that he has a valid failure-to-accommodate claim under the Rehabilitation Act, termination would only compound the liability of Defendants. Thus, Defendants' failure to

accommodate and wrongful termination would be appropriately compensable by money damages. Further, once Defendants receive notice of this suit it would be a perilous course of action to terminate Gazvoda and potentially incur an allegation of retaliation.

It bears repeating: it may be that injunctive relief is warranted, and warranted soon, to prevent the current situation between Gazvoda and Defendants from further escalating or unwinding, whatever the case may be. But, at present, the denial of ex parte emergency injunctive relief would not inflict irreparable harm on Gazvoda.

### C.

The third TRO factor is "whether issuance of the injunction would harm others[.]" *Hamilton's Bogarts*, 501 F.3d at 649. This factor, based on the evidence provided by Gazvoda, is neutral. Gazvoda alleges that an injunction allowing him to stay on leave will not harm Defendants. He argues that he has been on leave for years and Defendants will not miss him for the additional time this litigation takes.

Gazvoda's argument makes a number of unsupported assumptions that cannot be fairly credited in drawing a conclusion about whether Defendants would be harmed by an injunction. Gazvoda furnishes no evidence of Defendants' staffing needs. He also does not explain why Defendants chose to initiate his return to work at this juncture and whether it was a capricious decision intended to bring the current conflict to a head or whether it was grounded in legitimate personnel decisions. The security of the United States' borders requires a vigilance and exactitude of administration not necessarily required of other Government agencies. The "what are a few more months?" argument is insufficient to overcome those needs and establish that Defendants will not be harmed by an injunction. This factor weighs in favor of neither party.

### D.

Lastly, the Court must consider "whether the public interest is served by granting injunctive relief." *Hamilton's Bogarts*, 501 F.3d at 649. This factor favors Gazvoda, but just so. While "the public has a strong interest in the effective enforcement of the Rehabilitation Act," *Callicotte*, 698 F. Supp. at 951, it also has a strong, if not equally strong, interest in the security and integrity of the United States' borders. Although Gazvoda's argument that he is but one of roughly 20,000 border patrol officers is unpersuasive to his claim of success on the merits, it does mitigate the potential harm to the public's interest in the security and integrity of the United States.

## IV.

Ultimately, the balance of the factors favors denying ex parte emergency injunctive relief.[3] Importantly, and as emphasized throughout, one of the main impediments to considering Gazvoda's request for a TRO is its ex parte nature. It is possible that a response from Defendants reveals the necessity of injunctive relief. But relief is not warranted at least until such time as a response is furnished. In addition, although Gazvoda's counsel makes a certification in support of Plaintiff's motion as required by Federal Rule of Civil Procedure 65(b)(1)(B), he omits a crucial part of that certification. The rule requires that "the movant's attorney certif[y] in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(B). Gazvoda's attorney certifies why it was necessary to act immediately and seek a TRO and that he informed Defendants he would file for such relief if the parties could not resolve the matter out of court. But the complaint and the TRO were not served on Defendants, as evidenced by Gazvoda titling his motion as one for "ex parte" relief. Thus, his attorney was

---

[3] Gazvoda's motion will be denied to the extent it requests emergency injunctive relief. The portion of his motion that requests preliminary injunctive relief will remain pending.

required to certify in writing why Defendants should not have been given notice of the complaint and request for a TRO.

"[T]he Rule 65(b) restrictions on the availability of ex parte temporary restraining orders reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 650 (6th Cir. 1993) (quoting *Reed v. Cleveland Bd. of Educ.*, 581 F.2d 570, 573 (6th Cir. 1978)) (internal quotation marks omitted). Normally, a district court is "justified in proceeding ex parte is where notice to the adverse party is impossible, as in the cases where the adverse party is unknown or is unable to be found." *First Tech. Safety Sys.*, 11 F.3d at 650. A court may also proceed ex parte in another "limited circumstance . . . where notice to the defendant would render fruitless further prosecution of the action." *Id*. Nothing is readily available from the current record that would justify proceeding ex parte. Gazvoda does not argue that Defendants have the ability to compel him to report to Laredo or that they have the ability to wreak irreparable harm upon him the moment they find out he filed this action. In fact, his counsel informally informed Defendants of Gazvoda's intent to seek such relief, making his decision to seek the relief ex parte all the more puzzling.

A hearing on Gazvoda's motion for a preliminary injunction will be scheduled within fourteen days. In that time, Gazvoda will be directed to serve upon Defendants a copy of his complaint, his motion for injunctive relief, and a copy of this order. Should Gazvoda's circumstances substantially and materially change in the intervening period, he may renew his request for emergency injunctive relief. Absent such a change, his request is properly renewed at the preliminary injunction hearing.

**V.**

Accordingly, it is **ORDERED** that Plaintiff Anthony A. Gazvoda's Motion for a Temporary Restraining Order is **DENIED in part**.

It is further **ORDERED** that Plaintiff Anthony A. Gazvoda is **DIRECTED** to serve the complaint, ECF No. 1, his motion for a temporary restraining order, ECF No. 2, and a copy of this Order on Defendants on or before November 30, 2015 and file a proof of service on the docket.

It is further **ORDERED** that a hearing on Plaintiff Anthony A. Gazvoda's Motion for a Preliminary Injunction, ECF No. 2, is **SCHEDULED** for **December 8, 2015 at 3:00 p.m.**

It is further **ORDERED** that the parties are **DIRECTED** to appear for the motion hearing.

It is further **ORDERED** that Defendants are **DIRECTED** to file any response to Plaintiff's motion for a preliminary injunction that they wish to be considered **on or before December 4, 2015**.

Dated: November 24, 2015   s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 24, 2015.

s/Michael A. Sian
MICHAEL A. SIAN, Case Manager