UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ANTHONY A. GAZVODA,

        Plaintiff,                       Case No. 15-cv-14099

v.                                         Honorable Thomas L. Ludington

SECRETARY OF HOMELAND SECURITY, and
COMMISSIONER OF UNITED STATES
CUSTOMS AND BORDER PROTECTION,

        Defendants.
_____/

**OPINION AND ORDER DENYING MOTION TO DISMISS, CONDITIONALLY GRANTING MOTION FOR PRELIMINARY INJUNCTION, ENJOINING DEFENDANTS, DIRECTING LIMITED DISCOVERY, DIRECTING SUPPLEMENTAL BRIEFING, DENYING MOTION TO STRIKE, GRANTING MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF AND ACCEPTING SUPPLEMENTAL BRIEF AS FILED**

      Plaintiff Anthony A. Gazvoda filed a verified complaint against Defendants Jeh Johnson, Secretary of the Department of Homeland Security, and R. Gil Kerlikowske, Commissioner of U.S. Customs and Border Protection, on November 22, 2015. *See* Pl.'s Compl., ECF No. 1. He has sued both the Secretary and the Commissioner in their official capacities. He alleges that the Defendants have not accommodated his disability in accordance with the Rehabilitation Act of 1973, *see* 29 U.S.C. § 794(a).

      Gazvoda's motion for a temporary restraining order was denied on November 24, 2015. Op. & Order, ECF No. 5. A hearing on Gazvoda's request for a preliminary injunction was held on January 26, 2016. By the time of the hearing, both sides had extensively briefed Gazvoda's motion.

On January 29, 2016, Defendants filed a motion to dismiss Gazvoda's complaint, arguing, as they did in their response briefs to Gazvoda's motion for a preliminary injunction, that Gazvoda did not exhaust his administrative remedies and that the relief Gazvoda seeks is contrary to the policy of the Department of Customs and Border Protection.

**I.**

Plaintiff Anthony Gazvoda is a veteran of the Afghanistan War and is currently on medical leave from his job as a United States Customs and Border Patrol Officer. Defendants are the lead Government officials in charge of the Department of Homeland Security ("DHS") and the United States Customs and Border Protection Agency ("CBP"). The CBP is a subdivision of DHS and is "charged with securing the borders of the United States." Pl.'s Compl. ¶ 10, ECF No. 1.

**A.**

Gazvoda was deployed to Afghanistan in January 2009. He served in combat from January to November 2009. While in combat Gazvoda was engaged in numerous firefights and was tasked, along with his team, with clearing improvised explosive devices. During his time in combat, Gazvoda witnessed a number of gruesome and unsettling injuries to individuals with whom he served closely.

Upon return from combat, Gazvoda immediately experienced difficulty sleeping. He sought help and, by May 2010, was free of his sleep issues. "Gazvoda began employment with Defendant CBP on or about September 11, 2010." Id. at ¶ 15. Gazvoda trained for approximately five months in New Mexico at the conclusion of which, in February 2011, he was stationed at a CBP post in Laredo, Texas.

**B.**

After two months of being stationed in Laredo, Gazvoda "began experiencing insomnia, anxiety, depression, and panic attacks." *Id*. at ¶ 17. He sought help and benefits from the Veterans Affairs ("VA") in Laredo, but to no avail. His symptoms gradually increased and he was forced to leave Laredo and take unpaid administrative leave. He sought assistance at the VA hospital in Grayling, Michigan.

Gazvoda took leave without pay (LWOP) beginning in December of 2011. Eventually, CBP classified him as Absent Without Leave (AWOL). Gazvoda contested this classification since his leave was due to ongoing mental health issues. CBP then retroactively transitioned Gazvoda to paid administrative leave status. He has been on paid administrative leave status (retroactively for a period) since leaving Laredo.

C.

Upon traveling to Michigan and seeking help at the Grayling VA hospital, Gazvoda consulted with a number of mental health professionals. Eventually, he was diagnosed with posttraumatic stress disorder ("PTSD"). The medical professionals that examined Gazvoda concluded that the environment of Laredo was too similar to the environment of Afghanistan, the trigger-point for Gazvoda's PTSD. Specifically, the presence of dark-skinned individuals that spoke a foreign language aroused painful and unpleasant memories from when Gazvoda was deployed. The doctors also recommended against placing Gazvoda in a densely populated city. None of the doctors opined on any dissimilarities between individuals of Hispanic or Latino ethnicity and individuals of Arab, Middle-Eastern, or South Asian ethnicity. Nor did the doctors opine on Gazvoda's apparent ability to understand the Spanish language and whether he could understand any of the indigenous languages spoken in Afghanistan along the Pakistan border, where he was deployed. Nevertheless, all of the doctors Gazvoda sought out concluded that he

should not, at a minimum, be stationed in Laredo if he is to see any improvement in his condition and be able to function as a Border Patrol Officer. All of the doctors supported a "compassionate transfer" to a northern environment.

Gazvoda initially received his diagnosis of PTSD in 2012, but one of his examiners noted that his condition was chronic and severe and likely to persist into the foreseeable future. *See* Report of John Haskin, Pl.'s Compl., Ex. D, ECF No. 1-5. Accordingly, Gazvoda has been evaluated as recently as May 19, 2015[1] by a Board Certified Psychiatrist that does not recommend that he return to Laredo. *See* May 19, 2015 Letter from Dr. Kirk Swabash, Pl.'s Compl., Ex. B, ECF No. 1-3. The conclusions and opinions of the medical professionals that evaluated Gazvoda were communicated to Defendants in support of his request for a transfer to a northern border station. Gazvoda specifically requested that he be transferred to a station in Sault Ste. Marie, Michigan. The only reason for this request that Gazvoda provides is that it is near his treating mental health care providers in Grayling. But Gazvoda does not offer any explanation for why he sought out doctors in Grayling, Michigan, in the first instance.

**D.**

On January 9, 2015, Gazvoda requested reinstatement. He did not desire to be returned to Laredo so he asked that he either be placed back on LWOP status (this was prior to his leave being reclassified from AWOL to LWOP) or that he be "placed on a Temporary Duty Location Assignment in Sault Ste [sic] Marie, MI." Jan. 9 Reinstatement Req., ECF No. 17-6.

On January 21, 2015, the Agency denied Gazvoda's request to be placed on LWOP status or to be given temporary duty in Sault Ste. Marie. It did retroactively reclassify his AWOL status as LWOP status but informed Gazvoda that going forward he would be placed on administrative

---

[1] There is also a letter presented by Plaintiff that bears a facsimile timestamp from May 26, 2015. But since the letter itself is undated, it is not possible to conclude whether the opinions predate or postdate the opinions in the letter dated May 19, 2015.

- 4 -

leave pending the completion of a fitness for duty examination. This was despite Gazvoda having communicated the opinions of his evaluating doctors to Defendants. CBP directed Gazvoda to attend an Independent Medical Evaluation ("IME"). Gazvoda believes that the psychiatrist who conducted the IME has little or no experience with PTSD or working with veterans. As a result, Gazvoda felt uncomfortable throughout the evaluation.[2]

On March 27, 2015, Gazvoda received a letter advising him that he had three options available to him since he had exhausted his leave.[3] These options were repeated in a letter sent to Gazvoda on April 17, 2015. Gazvoda had the option of (1) returning to work; (2) requesting a reasonable accommodation; or (3) resigning from his position. April 17, 2015 Letter, ECF No. 17-8. The letter advised:

> If you choose option two (2) and intend to request a reasonable accommodation, please contact the Privacy and Diversity (PDO) Servicing Officer for the Laredo Border Patrol Sector:
>
> Alicia Davila
> PDO Officer
> 5219 McPherson, Suite 400
> Laredo, Texas 78041
> . . .
>
> Please be advised that you may be obligated to provide an interactive evaluation and accommodation recommendation from your treating health care provider and/or provide a description of the accommodation requested, if known, and the explanation of how it would enable you to perform your job.

*Id.* Gazvoda replied on April 21, 2015 that he wished to request a reasonable accommodation.

During this process, on April 1, 2015, Gazvoda requested a second compassionate transfer. He repeated the issues that he has been having with his mental health and again requested that he be transferred to Sault Ste. Marie. He noted that he is "supposed to offer three

---

[2] Gazvoda has attempted to obtain the report of the IME, but has been unable to do so. He does not explain the steps he has taken to obtain the report, however, merely that CBP has been uncooperative.

[3] The March 27, 2015 letter is not in the record but is referenced in an April 17, 2015 letter, which is.

locations for duty relocation but [he] now know[s his] condition does not warrant this." April 1, 2015 Transfer Req., ECF No. 26-4.

Gazvoda's second request for a compassionate transfer was denied on July 14, 2015 but, due to what Defendants claim was a clerical error, was not communicated to him in writing until January 7, 2016.

Gazvoda's request for a reasonable accommodation was denied on January 5, 2016. The letter denying that request stated that "you may also contest this action through one of the avenues outlined below. Your election will be considered final on the date any grievance or formal EEO complaint is filed." Accommodation Denial Letter, ECF No. 26-6. The letter gave Gazvoda two options for contesting the denial. He could file a grievance under the Collective Bargaining Agreement or he could file a claim under the Equal Employment Opportunity process. With respect to the latter, the letter provided:

> 2). If you believe you have been discriminated against, you have the right to file an EEO complaint within forty-five (45) calendar days of the receipt of this letter. Filing a reconsideration request or a grievance, as noted above, does not extend the time limits for initiating a complaint of discrimination and does not satisfy the requirements for filing a claim under the EEO complaint process. EEO counseling may be requested by contacting the Privacy and Diversity Office EEO Complaint Intake Hotline . . . , by submitting a Request for EEO Counseling at www.cbp.gov/eeo, or by contacting your servicing DCR Officer Alicia Davila . . .

*Id.*

Gazvoda never filed an EEO complaint because he initiated the present action in November of 2015.

**E.**

On November 16, 2015, Gazvoda received a letter from CBP informing him that he has been deemed fit for duty following his IME. *See* November 16, 2015 CBP Letter, Ex. F, ECF

No. 1-7. Furthermore, the IME concluded that Gazvoda was not disabled and was capable of working at the Laredo border station without accommodation. Gazvoda was directed

> . . . to report directly to Jerry Doyal, Deputy Patrol Agent in Charge of the Laredo North Station on Monday, November 23, 2015 at 8:00 a.m. at the Laredo North Station in Laredo, Texas, where you will transition into the full range and scope of a Border Patrol Agent over a period not expected to last more than four weeks.

*Id*. Gazvoda was further cautioned that "failure to report to the Laredo North Station as directed above may result in your placement on Absent Without Leave (AWOL). Please be advised that being AWOL and/or your failure to report to duty may result in disciplinary action up to and including removal from Federal employment." *Id*. The letter made no mention of his pending request for a reasonable accommodation or his request for a compassionate transfer.

After receiving this notice, Gazvoda's PTSD symptoms began anew, despite having "largely been under control as a result of medication and treatment." Pl.'s Compl. ¶ 28, ECF No. 1. His symptoms became increasingly severe to the point that he "sought emergency treatment at Mid-Michigan Medical Center" in Midland, Michigan on November 20, 2015. Id. at ¶ 29-30. The physician that treated Gazvoda signed a work release form ordering that Gazvoda could not travel or undergo strenuous activity until he was cleared by a physician. See Work Release Form, Ex. G, ECF No. 1-8. Gazvoda provided this form to CBP and was informed that it was insufficient. CBP told him that he would still need to report to Laredo by 8:00 a.m. on November 23, 2015 or he would be listed as AWOL. Pl.'s Compl. ¶ 32, ECF No. 1. Gazvoda alleges that "[t]his situation has caused Plaintiff severe emotional distress, anxiety, and chest pain, and he is not mentally, emotionally, or physically capable of relocating to Laredo, TX by Monday November 23, 2015." *Id*. at ¶ 33. Gazvoda does not represent that he did indeed report to Laredo on Monday November 23, 2015. He filed his request for a temporary restraining order at 7:30 p.m. on Sunday November 22, 2015.

II.

Defendants motion to dismiss claims that Gazvoda did not exhaust the administrative procedures available to him because he did not file a claim of discrimination with the Agency's EEO office. Additionally, it argues that the relief Gazvoda seeks—to be moved away from the southern border—is violative of Agency policy because it discriminates against certain races and ethnicities.

A.

This Court may dismiss a pleading for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The pleader need not have provided "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

B.

Defendants claim that Gazvoda did not exhaust his administrative remedies because he did not initiate the EEO process in accordance with 29 C.F.R. § 1614.105. That regulation provides:

> (a) Aggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age, disability, or genetic information must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter.
>
>> (1) An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.
>>
>> (2) The agency or the Commission shall extend the 45–day time limit in paragraph (a)(1) of this section when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have been known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission.

29 C.F.R. § 1614.105. The Sixth Circuit has adopted the EEOC's three requirements for "initiat[ing] contact with a Counselor." *Id*. "[A]n employee must (1) contact an agency official logically connected with the EEO process, even if that official is not an EEO counselor; (2) exhibit an intent to begin the EEO process; and (3) allege that an incident in question is based on discrimination. *Johnson v. Cohen*, 6 F. App'x 308, 311 (6th Cir. 2001) (quoting *Pauling v. Secretary of the Dep't of Interior*, 960 F.Supp. 793, 803 (S.D.N.Y.1997).

While Gazvoda has engaged in at least three different attempts at obtaining a transfer to Michigan, he did not, at any point, meet these three criteria. Primarily, he did not notify Customs and Border Protection that be believed the denials of his compassionate transfer and accommodation requests were based on discrimination.[4] For this reason, Gazvoda's claims should be dismissed for failure to exhaust administrative remedies.

Gazvoda argues in the alternative, however, that exercising his administrative remedies would be futile because forcing him to return to the Agency would cause him irreparable harm

---

[4] It is also debatable that Gazvoda "exhibit[ed] an intent to begin the EEO process." The parties offer a number of different arguments on this point but it is moot in light of the fact that Gazvoda did not alert the Agency that he believed he had been discriminated against.

and the process would not grant him effective relief. To demonstrate futility, Gazvoda "must show that it is certain that his claim will be denied on appeal, not merely that he doubts that an appeal will result in a different decision." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 419-20 (6th Cir. 1998) (internal quotation marks and citations omitted).[5]

It is evident that Gazvoda's attempt to resolve this issue administratively would be futile and would result in yet another denial. After Gazvoda's most recent request for a compassionate transfer was denied, he was notified of the option to seek a reasonable accommodation. When he elected to do so, the Agency's EEO office engaged Gazvoda in a process focused on how his mental health condition affected his ability to perform as a border patrol officer in Laredo, Texas. Indeed, it is Gazvoda's mental health condition that forms the basis of his discrimination claim. Thus, unlike an individual that seeks accommodation and is denied and then claims that the denial was based on discrimination, the reason Gazvoda sought accommodation is because of his claimed protected status. Subjecting Gazvoda to a discrimination investigation pursuant to 29 C.F.R. § 1614.108 would be needlessly duplicative of his original request for a compassionate transfer and his subsequent request for a reasonable accommodation.[6] Gazvoda's discrimination claim will allege that he is disabled from working in Laredo because of his PTSD, but that he is

---

[5] Gazvoda argues that in *Bowen v. City of New York*, 476 U.S. 467, 483 (1986), the Supreme Court articulated a rule that excused plaintiffs from exhausting administrative remedies where they are faced with irreparable harm. But *Bowen* is not particularly apposite. *Bowen* was expanding on administrative exhaustion rules articulated in, *Mathews v. Eldridge*, 424 U.S. 319 (1976). In *Mathews*, the Supreme Court addressed administrative exhaustion through post-deprivation hearings following the denial of benefits where the fact of the post-deprivation hearing violated the plaintiff's constitutional right to due process of law. Forcing the plaintiff to pursue administrative remedies would result in the denial of the plaintiff's constitutional right to due process. In *Bowen*, the Court was addressing damage that would be done to class action plaintiffs under an illegal policy, not discrete individual damage wrought by erroneous determinations under a valid policy. That is, "the claimants . . . stood on an entirely different footing from one arguing merely that an agency incorrectly applied its regulation in denying benefits." *Manakee Prof'l Med. Transfer Serv., Inc. v. Shalala*, 71 F.3d 574, 580 (6th Cir. 1995). It is also unclear, based on *Bowen*, that the mere threat of irreparable harm is sufficient to waive the exhaustion requirement, absent evidence that the procedure is futility or that the non-administrative claim is collateral in nature.

[6] It should be noted that the latter request was administered by the Customs and Border Protection's EEO office, the same entity he would engage if Gazvoda filed a claim of discrimination.

not totally disabled because he can work with a reasonable accommodation if he is transferred to Sault Ste. Marie, Michigan. This was his exact claim for a reasonable accommodation that was denied by the Agency.

It should be noted that Gazvoda claims that the requested accommodation for his disability on three different occasions: the two times he requested a compassionate transfer and the one time he requested a reasonable accommodation. But no evidence supports the claim that Gazvoda's requests for a compassionate transfer amounted to claims of discrimination. In fact, as just explained, his request for a reasonable accommodation does not, either. Gazvoda's claim that exhausting his administrative remedies is futile following the denial of his reasonable accommodation request may proceed. Any claims predicated on the denials of his compassionate transfer requests have not been properly exhausted at the administrative level.[7]

The only benefit to be gained from remanding to the Agency would be the development of a dedicated administrative record. The parties have, however, provided copious documentation early in this proceeding, making this point moot.

## C.

Finally, Defendants seek dismissal because they claim that the relief Gazvoda seeks is contrary to the policy of the Agency. Specifically, the fact that Gazvoda's symptoms appear to be exacerbated by being around people who speak a foreign language and are of a darker complexion runs afoul of the Agency's policy of non-discrimination on the basis of race and ethnicity and fostering a diverse and inclusive workplace.

---

[7] Gazvoda argues that it would be futile to return to the Agency to exhaust his requests for a compassionate transfer. But the policy favoring waiver of the exhaustion requirement does not apply with the same force to his compassionate transfer requests. Those requests were not reviewed with the same thoroughness as his request for a reasonable accommodation and do not present the same record for review.

Indeed, there is troubling evidence in the record that corroborates the fact that Gazvoda is made uncomfortable by non-Caucasians that speak languages other than English. This fact may raise legitimate concerns about the type of relief Gazvoda seeks and the Government's policy of non-discrimination and inclusiveness. But, at this stage, Gazvoda has provided sufficient evidence in his pleadings, supported by treating doctors' professional opinions, to demonstrate that his mental condition is caused by the similarities between Laredo and his duty station in Afghanistan. These include the hot summers, the arid desert climate, and dense urban areas. Defendants challenge the validity of these similarities, but at the motion to dismiss stage they are taken as true. Thus, excising the allegations about the ethnic demography of Laredo, Gazvoda still states a sufficient claim to survive a challenge to his pleadings under Rule 12(b)(6).

Defendants' motion will be denied.

### III.

Gazvoda initially moved for a temporary restraining order and a preliminary injunction. Because his motion was filed ex parte, only his request for a temporary restraining order could be considered. Since service has been directed and briefing completed, Gazvoda's request for a preliminary injunction may be considered.

### A.

Four factors govern whether the Court will issue a preliminary injunction: (1) whether the plaintiff has demonstrated a substantial likelihood of success on the merits; (2) whether there is a threat of irreparable harm to the plaintiff; (3) whether issuance of the injunction would harm others; and (4) whether the public interest is served by granting injunctive relief. *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 649 (6th Cir. 2007) (citation omitted); *see also Ne. Ohio Coal. for Homeless and Serv. Emps. Intern. Union, Local 1199 v. Blackwell*, 467 F.3d 999,

1009 (6th Cir. 2006). "These factors are not prerequisites, but are factors that are to be balanced against each other." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citations omitted).

**B.**

In the Court's opinion denying Gazvoda's motion for a temporary restraining order, the balance of equities weighed against granting injunctive relief. In light of the hearing on Gazvoda's motion for a preliminary injunction and more complete briefing, those equities have shifted. Primarily, the two issues that must be reevaluated are whether Gazvoda will succeed on the merits of his claim and if Gazvoda will suffer irreparable harm.[8]

**1.**

As explained in the Court's November 25 Opinion, "before Gazvoda can stake a claim to a position other than the one to which he has been assigned and declare such a move a reasonable accommodation, he must demonstrate that there is a vacant, accommodating position." Nov. 25 Op. & Order 10, ECF No. 5. Defendants argued at the motion hearing that there were no openings in the Sault Ste. Marie or Port Huron stations, meaning Gazvoda's accommodation request could not be granted. An employer cannot reasonably accommodate an individual requesting a transfer if there is no open position available at the time the employee makes the request. *See, e.g.*, *Hoskins v. Oakland Cty. Sheriff's Dep't*, 227 F.3d 719, 729 (6th Cir. 2000) (explaining that a requested position must be available at the time of transfer or "become vacant within a reasonable amount of time"). Defendants included a declaration from Mario Martinez, the Chief Patrol Agent for the U.S. Border Patrol, Laredo Sector. Martinez Decl., ECF No. 26-7. Martinez was the Chief Patrol Agent for the Detroit Sector during the period in which Gazvoda

---

[8] The final two factors—whether others will be harmed by injunctive relief and whether the public interest is served by injunctive relief—were deemed to be neutral and remain so today.

requested a reasonable accommodation. *Id.* at ¶ 2. The Detroit Sector includes the Sault Ste. Marie and Port Huron stations. Martinez explained that there were no vacant positions at either station at the time Gazvoda made his accommodation request on April 21, 2015. *Id.* at ¶¶ 3 & 4.

Gazvoda's claim for preliminary injunctive relief (and perhaps his entire claim on the merits) depends on his ability to demonstrate that a position was available at the border patrol stations in Sault Ste. Marie and Port Huron. If he cannot do this, a preliminary injunction is not warranted. If he can, a preliminary injunction likely would be warranted and the burden on the merits would shift to Defendants to demonstrate that the "a proposed accommodation will impose an undue hardship upon the [Agency]." *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 869 (6th Cir. 2007) (quoting *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 452 (6th Cir. 2004)).

In view of this crucial issue, a preliminary injunction will be imposed for one month. During that month the parties shall conduct discovery on the availability of any positions in the Sault Ste. Marie and Port Huron stations at the time of and reasonably after Gazvoda's April 21, 2015 request for a reasonable accommodation. Any discovery beyond this scope is prohibited.

Following the limited discovery period Gazvoda will submit a supplemental brief on the availability of positions at the Sault Ste. Marie and Port Huron stations during the relevant time period. Gazvoda's brief should not exceed five pages in length. Defendants shall submit a response brief of no more than five pages within seven days of Gazvoda's brief being filed. Gazvoda may file a reply that does not exceed five pages.

**B.**

Finally, the conclusion that Gazvoda will not be irreparably harmed if an injunction is not imposed must be revisited. The November 24 Opinion concluded that for the purposes of such

extraordinary relief as an ex parte temporary restraining order, Gazvoda could not sufficiently demonstrate irreparable harm. Since that time, however, Gazvoda's second request for a compassionate transfer and his request for a reasonable accommodation have been conclusively denied. *See* Jan. 7 Letter, ECF No. 26-5; Jan. 5 Letter, ECF No. 26-6. Thus, Gazvoda faces the imminent prospect of being forced back to work or being forced to incur AWOL status. While the ultimate prospect of termination is readily compensable by monetary damages, at least one court has recognized that "the irreparable harm associated with disability discrimination and the correlative stigma which attaches to its victims" is not. *See Sunrise Dev., Inc. v. Town of Huntington, New York*, 62 F. Supp. 2d 762, 779 (E.D.N.Y. 1999).

But, assuming without deciding that Gazvoda's harm could be deemed irreparable, it would presume the fact of discrimination. That fact is inextricably intertwined with the question of whether Defendants could actually reasonably accommodate Gazvoda. That question will be answered by the discovery ordered above. Gazvoda's claim of irreparable harm is, currently, insufficient to sustain or defeat his request for a preliminary injunction and will be revisited following the limited discovery period.

**IV.**

Lastly, during the briefing on Gazvoda's motion for a preliminary injunction, he filed a motion to strike the independent medical examination performed by Dr. Craig Lemmen. Dr. Lemmen was retained by Defendants to perform an IME while Gazvoda's reasonable accommodation request was pending. Gazvoda argues that Dr. Lemmen is not a properly qualified expert under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) and Federal Rule of Evidence 702.

Defendants have not suggested the Dr. Lemmen is an expert and no schedule has been set for expert discovery. To the extent Gazvoda feels prejudiced by Dr. Lemmen's opinions and the foundation on which they rest, he may argue against their persuasiveness, as he has done. Otherwise, a motion under Daubert and Rule 702 is premature and will be denied.

**V.**

Accordingly, it is **ORDERED** that Defendants' Motion to Dismiss, ECF No. 30, is **DENIED**.

It is further **ORDERED** that Plaintiff Anthony Gazvoda's Motion for a Preliminary Injunction, ECF No. 2, is **CONDITIONALLY GRANTED**.

It is further **ORDERED** that Defendants are **ENJOINED** from directing Gazvoda to report for duty at the Laredo, Texas Border Patrol Station, marking him as AWOL, terminating his employment, or otherwise disciplining him in connection with his failure to report to the Laredo, Texas Border Patrol Station until further order of this Court.

It is further **ORDERED** that the parties are **DIRECTED** to engage in discovery, limited to discovering if any border patrol positions were available at the Sault Ste. Marie or Port Huron border patrol stations from the time Gazvoda sought a reasonable accommodation, to the time it was denied, and for a reasonable period thereafter.

It is further **ORDERED** that limited discovery **CLOSES** on **May 6, 2016**.

It is further **ORDERED** that the parties are **DIRECTED** to submit supplemental briefs, to Plaintiff Anthony Gazvoda's motion for a preliminary injunction addressing the availability of positions at the Sault Ste. Marie and Port Huron border patrol stations during the relevant time period. The briefs shall be submitted as follows:

Plaintiff's 5-page Supplemental Brief:     **May 13, 2016**

...

- 17 -

    Defendant's 5-page Response Brief:    **May 20, 2016**

    Plaintiff's 5-page Reply Brief:    **May 27, 2016**

It is further **ORDERED** that Plaintiff Anthony Gazvoda's motion to strike, ECF No. 28, is **DENIED**.

It is further **ORDERED** that Plaintiff Anthony Gazvoda's motion for leave to file a supplemental brief, ECF No. 27, is **GRANTED** and the brief is **ACCEPTED** as filed.

Dated: April 7, 2016        s/Thomas L. Ludington
                                         THOMAS L. LUDINGTON
                                         United States District Judge

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 7, 2016.

                                     s/Michael A. Sian
                                     MICHAEL A. SIAN, Case Manager