UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ANTHONY A. GAZVODA,

        Plaintiff,                  Case No. 15-cv-14099

v.                                      Honorable Thomas L. Ludington

SECRETARY OF HOMELAND SECURITY, and
COMMISSIONER OF UNITED STATES
CUSTOMS AND BORDER PROTECTION,

        Defendants.
_____/

**ORDER DENYING MOTION FOR PROTECTIVE ORDER**

Plaintiff Anthony A. Gazvoda filed a verified complaint against Defendants Jeh Johnson, Secretary of the Department of Homeland Security, and R. Gil Kerlikowske, Commissioner of U.S. Customs and Border Protection, on November 22, 2015. *See* Pl.'s Compl., ECF No. 1. He has sued both the Secretary and the Commissioner in their official capacities. He alleges that the Defendants have not accommodated his disability in accordance with the Rehabilitation Act of 1973, *see* 29 U.S.C. § 794(a).

Gazvoda filed a motion for a temporary restraining order, which was denied on November 24, 2015. Op. & Order, ECF No. 5. A hearing on Gazvoda's request for a preliminary injunction was held on January 26, 2016. On January 29, 2016, Defendants filed a motion to dismiss Gazvoda's complaint, arguing, as they did in their response briefs to Gazvoda's motion for a preliminary injunction, that Gazvoda did not exhaust his administrative remedies and that the relief Gazvoda seeks is contrary to the policy of the Department of Customs and Border Protection. ECF No. 30. Defendants' motion was denied on April 7, 2016 and a preliminary injunction was conditionally imposed, subject to further briefing. ECF No. 34. On August 1,

2016, the preliminary injunction was dissolved because Gazvoda failed to show that irreparable injury would occur if the injunction was not maintained. ECF No. 38.

After the preliminary injunction was dissolved, Gazvoda filed an amended complaint (with Defendants' consent) alleging violations of § 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.* ECF No. 46. On September 2, 2016, a scheduling order was issued. ECF No. 51. On December 14, 2016, Defendants filed a motion for a protective order. ECF No. 52. For the reasons stated below, that motion will be denied.

### I.

The facts as set forth in the Court's August 2, 2016, Opinion and Order will be repeated in abbreviated form herein.

Plaintiff Anthony Gazvoda is a veteran of the Afghanistan War and is currently on medical leave from his job as a United States Customs and Border Patrol Officer. Defendants are the lead Government officials in charge of the Department of Homeland Security ("DHS") and the United States Customs and Border Protection Agency ("CBP"). The CBP is a subdivision of DHS and is "charged with securing the borders of the United States." Pl.'s Compl. ¶ 10, ECF No. 1.

### A.

Gazvoda was deployed to Afghanistan in January 2009. He served in combat from January to November 2009. While in combat Gazvoda was engaged in numerous firefights and was tasked, along with his team, with clearing improvised explosive devices. During his time in combat, Gazvoda witnessed a number of gruesome and unsettling injuries to individuals with whom he served closely.

Upon return from combat, Gazvoda immediately experienced difficulty sleeping. He sought help and, by May 2010, was free of his sleep issues. "Gazvoda began employment with Defendant CBP on or about September 11, 2010." Id. at ¶ 15. Gazvoda trained for approximately five months in New Mexico at the conclusion of which, in February 2011, he was stationed at a CBP post in Laredo, Texas.

### B.

After two months of being stationed in Laredo, Gazvoda "began experiencing insomnia, anxiety, depression, and panic attacks." *Id*. at ¶ 17. He sought help and benefits from the Veterans Affairs ("VA") in Laredo, but without satisfaction. Gazvoda reports that his symptoms gradually increased and he alleges that this forced him to leave Laredo and take unpaid administrative leave.

He sought assistance at the VA hospital in Grayling, Michigan. Gazvoda took leave without pay (LWOP) beginning in December of 2011. Eventually, CBP classified him as Absent Without Leave (AWOL). Gazvoda contested this classification since his leave was due to ongoing mental health issues. CBP then retroactively transitioned Gazvoda to paid administrative leave status. He has been on paid administrative leave status (retroactively for a period) since leaving Laredo.

### C.

Upon traveling to Michigan and seeking help at the Grayling VA hospital, Gazvoda consulted with a number of mental health professionals. Eventually, he was diagnosed with posttraumatic stress disorder ("PTSD"). The medical professionals that examined Gazvoda concluded that the environment of Laredo was too similar to the environment of Afghanistan, the trigger-point for Gazvoda's PTSD. Specifically, they concluded that the presence of dark-

skinned individuals that spoke a foreign language aroused painful and unpleasant memories from when Gazvoda was deployed. The doctors also recommended against placing Gazvoda in a densely populated city. None of the doctors opined on any dissimilarities between individuals of Hispanic or Latino ethnicity and individuals of Arab, Middle-Eastern, or South Asian ethnicity. Nor did the doctors opine on Gazvoda's apparent ability to understand the Spanish language and whether he could understand any of the indigenous languages spoken in Afghanistan along the Pakistan border, where he was deployed. Nevertheless, all of the doctors Gazvoda sought out concluded that he should not, at a minimum, be stationed in Laredo if he is to see any improvement in his condition and be able to function as a Border Patrol Officer. All of the doctors supported a "compassionate transfer" to a northern environment.

Gazvoda initially received his diagnosis of PTSD in 2012, but one of his examiners noted that his condition was chronic and severe and likely to persist into the foreseeable future. *See* Report of John Haskin, Pl.'s Compl., Ex. D, ECF No. 1-5. Accordingly, Gazvoda has been evaluated as recently as May 19, 2015 by a Board Certified Psychiatrist that does not recommend that he return to Laredo:

> I continue to support the paragragh below:
>
> "The patient had experiences outside the realm of usual human experiences and developed classic symptoms of PTSD including hyper-autonomic symptoms, fear, hypervigilance, exaggerated startle, reliving previous experiences, dreams and nightmares, difficulty controlling her feelings with tense and anxiety, losing interest in previously enjoyed activities with reduction in sleep and subsequent difficulties with attention and concentration. In my opinion clear relationship between job location placement, with unfamiliar and densely populated area, and exacerbation of his symptoms and continued deleterious affect, anticipation anxiety continues regarding uncertainty of future. I would support that it would not be in his best interest to return to that particular assignment. He will continue with his VA treatment. He has had reviewed the VA crisis access mechanism including the handout with inpatient psychiatric resources, local phone numbers. We have also reviewed the medication list is accurate and he will continue treatment with his current VA provider. I not only support the diagnosis of PTSD,

> but also support hardship transfer back to northern area where there are less environmental triggers, more familarity."

*See* May 19, 2015 Swabash Letter, Pl.'s Compl., Ex. B, ECF No. 1-3 (sic throughout). The conclusions and opinions of the medical professionals that evaluated Gazvoda were communicated to Defendants in support of his request for a transfer to a northern border station. Gazvoda specifically requested that he be transferred to a station in Sault Ste. Marie, Michigan. The only reason for this request that Gazvoda provides is that it is near his treating mental health care providers in Grayling. But Gazvoda does not offer any explanation for why he sought out doctors in Grayling, Michigan, in the first instance.

**D.**

On January 9, 2015, Gazvoda requested reinstatement. He did not desire to be returned to Laredo so he asked that he either be placed back on LWOP status (this was prior to his leave being reclassified from AWOL to LWOP) or that he be "placed on a Temporary Duty Location Assignment in Sault Ste [sic] Marie, MI." Jan. 9 Reinstatement Req., ECF No. 17-6.

On January 21, 2015, the Agency denied Gazvoda's request to be placed on LWOP status or to be given temporary duty in Sault Ste. Marie. It did retroactively reclassify his AWOL status as LWOP status but informed Gazvoda that going forward he would be placed on administrative leave pending the completion of a fitness for duty examination. This was despite Gazvoda having communicated the opinions of his evaluating doctors to Defendants. CBP directed Gazvoda to attend an Independent Medical Evaluation ("IME"). Gazvoda believes that the psychiatrist who conducted the IME has little or no experience with PTSD or working with veterans. As a result, Gazvoda felt uncomfortable throughout the evaluation.

On March 27, 2015, Gazvoda received a letter advising him that he had three options available to him since he had exhausted his leave.[1] These options were repeated in a letter sent to Gazvoda on April 17, 2015. Gazvoda had the option of (1) returning to work; (2) requesting a reasonable accommodation; or (3) resigning from his position. April 17, 2015 Letter, ECF No. 17-8. Gazvoda replied on April 21, 2015 that he wished to request a reasonable accommodation.

During this process, on April 1, 2015, Gazvoda requested a second compassionate transfer. He repeated the issues that he has been having with his mental health and again requested that he be transferred to Sault Ste. Marie. He noted that he is "supposed to offer three locations for duty relocation but [he] now know[s his] condition does not warrant this." April 1, 2015 Transfer Req., ECF No. 26-4.

Gazvoda's second request for a compassionate transfer was denied on July 14, 2015 but, due to what Defendants claim was a clerical error, was not communicated to him in writing until January 7, 2016. Gazvoda's request for a reasonable accommodation was denied on January 5, 2016.

**E.**

On November 16, 2015, Gazvoda received a letter from CBP informing him that he has been deemed fit for duty following his IME. *See* November 16, 2015 CBP Letter, Ex. F, ECF No. 1-7. Furthermore, the IME concluded that Gazvoda was not disabled and was capable of working at the Laredo border station without accommodation. Gazvoda was directed

> . . . to report directly to Jerry Doyal, Deputy Patrol Agent in Charge of the Laredo North Station on Monday, November 23, 2015 at 8:00 a.m. at the Laredo North Station in Laredo, Texas, where you will transition into the full range and scope of a Border Patrol Agent over a period not expected to last more than four weeks.

---

[1] The March 27, 2015 letter is not in the record but is referenced in an April 17, 2015 letter, which is.

*Id.* Gazvoda was further cautioned that "failure to report to the Laredo North Station as directed above may result in your placement on Absent Without Leave (AWOL). Please be advised that being AWOL and/or your failure to report to duty may result in disciplinary action up to and including removal from Federal employment." *Id.* The letter made no mention of his pending request for a reasonable accommodation or his request for a compassionate transfer.

After receiving this notice, Gazvoda's PTSD symptoms began anew, despite having "largely been under control as a result of medication and treatment." Pl.'s Compl. ¶ 28, ECF No. 1. His symptoms became increasingly severe to the point that he "sought emergency treatment at Mid-Michigan Medical Center" in Midland, Michigan on November 20, 2015. Id. at ¶ 29-30. The physician that treated Gazvoda signed a work release form ordering that Gazvoda could not "travel or undergo strenuous activity until [he was] cleared by a physician." *See* Work Release Form, Ex. G, ECF No. 1-8. Gazvoda provided this form to CBP and was informed that it was insufficient. CBP told him that he would still need to report to Laredo by 8:00 a.m. on November 23, 2015 or he would be listed as AWOL. Pl.'s Compl. ¶ 32, ECF No. 1. Gazvoda alleges that "[t]his situation has caused Plaintiff severe emotional distress, anxiety, and chest pain, and he is not mentally, emotionally, or physically capable of relocating to Laredo, TX by Monday November 23, 2015." *Id.* at ¶ 33. Gazvoda does not represent that he did indeed report to Laredo on Monday November 23, 2015. This suit was filed on November 21, 2015. ECF No. 1.

**II.**

Federal Rule of Civil Procedure 26(b)(1) as effective on December 1, 2015 provides:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties relative access to relevant information, the parties'

> resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

*Id*. The rule's previous language allowing discovery of relevant but inadmissible information that appeared "reasonably calculated to lead to the discovery of admissible evidence" has been eliminated from the new rule to address concerns that the exception was swallowing the limitations placed on the scope of discovery. *See* Rule 26, 2015 Advisory Committee Notes. If a party believes that the opposing party is using discovery in an attempt to annoy, embarrass, oppress, or create undue burden or expense, then that party may move for a protective order under Rule 26(c)(1). If the moving party shows good cause, then a court may forbid the challenged disclosure or discovery. *See* Rule 26(c)(1)(A).

Pursuant to Rule 26(b)(2)(C), "the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

*Id.*

When, as here, "an objection to the relevance of the sought discovery is raised, 'the party seeking discovery must demonstrate that the requests are relevant to the claims or defenses in the pending action.'" *First Horizon Nat'l Corp. v. Houston Cas. Co.*, No. 2:15-CV-2235-SHL-DKV, 2016 WL 5869580, at *4 (W.D. Tenn. Oct. 5, 2016) (quoting *Anderson v. Dillard's, Inc.*, 251 F.R.D. 307, 309-10 (W.D. Tenn. 2008)). If the party seeking discovery satisfies that burden, the objecting party must show "why the request is unduly burdensome or otherwise not discoverable." *Anderson*, 251 F.R.D. at 310 (citations omitted). In ruling on the motion, the court

must weigh the burden and expense of the discovery versus its likely benefit, as required by Rule 26(b)(1). And, of course, "[i]nformation . . . need not be admissible in evidence to be discoverable." *Id.*

### III.

In their motion, Defendants request a protective order precluding the depositions of Drs. Kirk Swabash, Robert Barger, and Craig Lemmen. Defendants argue that the only issue before the Court "is whether, <u>based on the information provided to U.S. Customs and Border Protection (CBP) at the time</u>, it improperly denied Plaintiff's accommodation request." Mot. Prot. Order at 1, ECF No. 52 (emphasis in original). Defendants further argue that because the written opinions of these doctors were already provided to CBP, deposing the doctors to reiterate the information in those reports is "cumulative, unduly burdensome, and a waste of resources." *Id.*

Defendants are correct that Gazvoda's claim requires a showing that Defendants did not make "reasonable accommodations to the *known* physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A) (emphasis added). Defendants, however, attempt to argue that because Gazvoda must prove that Defendants did not make reasonable accommodations for *known* limitations, any additional medical testimony not already provided to Defendants is irrelevant. In support of that argument, Defendants cite several cases where courts denied FMLA and accommodation claims because the plaintiff had not submitted adequate medical information to the employer to justify an accommodation. *See Diaz v. Transatlantic Bank*, 367 F. App'x 93, 97 (11th Cir. 2010) (holding that the defendant's reason for dismissing the plaintiff was not a pretext because plaintiff did not provide defendant with certain medical information); *Templeton v. Neodata Servs.*, Inc., 162 F.3d 617, 619 (10th Cir.

1998) (holding that plaintiff's refusal to provide requested medical information precluded plaintiff from claiming that defendants failed to make a reasonable accommodation).

Neither case is instructive here. *Diaz* involved a summary judgment challenge to a retaliation case. *Templeton* does involve a reasonable accommodation claim, but holds simply that the plaintiff's failure to provide requested medical information documenting a serious health condition at the time the defendant chose to terminate her employment entitled the defendant to summary judgment. But the question raised by a motion for summary judgment is dramatically different than the question of whether discovery is relevant to the case. Defendants might ultimately prevail on their argument that their denial of the accommodation was reasonable based on the information known to them at the time. But, for purposes of relevancy during discovery, that conclusion cannot be presumed. Rather, a piece of information is relevant if it "bears on . . . any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). *See also United States ex rel. Shamesh v. CA, Inc.*, 314 F.R.D. 1, 8 (D.D.C. 2016) (holding that despite the amendment to Rule 26(b)(1), relevant information includes all information that bears upon or could reasonably lead to other information that bears upon "any party's claim or defense.").

Gazvoda argues that the depositions will produce relevant information because "Plaintiff must prove (1) he is qualified individual with a disability; (2) he is qualified for the position requested 'despite his disability' with or without reasonable accommodation; and (3) the Government failed to provide reasonable accommodation for his known 'mental limitations' unless doing so would 'pose an undue hardship' on the government's operations." Pl. Resp. Br. at 10, ECF No. 55 (quoting *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 396 (2002)).

Additionally, Gazvoda bears the burden of establishing damages, should he prevail in his claim.[2] In other words, testimony about Gazvoda's medical condition now and at the time of the accommodation request is relevant to other elements of Gazvoda's claim, even if it is irrelevant to the question of whether the documentation submitted to Defendants was sufficient to require an accommodation. Thus, testimony about Gazvoda's medical condition holds some relevance.

Because Gazvoda has shown he is seeking relevant information, Defendants bear the burden of demonstrating that the information sought is unduly burdensome or expensive. In their reply brief, Defendants attempt to meet this burden as to four different doctors.

### A.

First, Defendants argue that the deposition of Dr. Haskin will not reveal relevant information. Dr. Haskin is a psychologist who treated Gazvoda in March 2012 and who created a written evaluation of Gazvoda that was provided to Defendants. Defendants argue that the "only relevance Dr. Haskin could have to this case is his written evaluation." Def. Reply. Br. at 3, ECF No. 56. That is incorrect. Other elements of Gazvoda's claim under the ADA include whether Gazvoda is an individual with a disability under the Act and whether Gazvoda was otherwise qualified for the job with or without a reasonable accommodation. *U.S. Airways, Inc.*, 535 U.S. at 396. The inquiry into whether Gazvoda was qualified is "'an objective one.'" *Crocker v. Runyon*, 207 F.3d 314, 319 (6th Cir. 2000) (quoting *Burns v. City of Columbus, Dep't of Pub. Safety*, 91 F.3d 836, 841 (6th Cir.1996)). Defendants cite *Crocker* for the proposition that a plaintiff cannot introduce "subsequent testimony" of medical evaluators to demonstrate that he or she was otherwise qualified. But the *Crocker* decision indicates that contemporaneous medical evidence on this point is relevant even if not provided to Defendants at the time. *See id.* ("[F]or

---

[2] The August 1, 2016, opinion and order noted that Gazvoda was potentially entitled to damages for humiliation, embarrassment, and stigma if he prevails.

Crocker to show that he was otherwise qualified for the position, he has to show that he could have met the physical demands of the job. . . . Crocker offered no proof that he was physically capable of performing the job at the time he was not hired. . . .) *See also Holiday v. City of Chattanooga*, 206 F.3d 637, 644 (6th Cir. 2000) (mentioning contemporaneous medical evidence that was not provided to the defendant as relevant to the question of whether the plaintiff was qualified). As a doctor who evaluated Gazvoda, Dr. Haskin's deposition could reveal information that is relevant to Gazvoda's qualifications. At this stage, Gazvoda need not show that the information received from the deposition will all be relevant. Likewise, Gazvoda need not show that information elicited will be admissible.

Dr. Haskin's testimony is also potentially relevant on the issue of damages. Dr. Haskin will presumably be able to speak to the issue of Gazvoda's mental condition. As an evaluating doctor, he may have relevant information regarding the impact the lack of an accommodation has had on Gazvoda.

In short, Defendants have not conclusively shown that all of Dr. Haskin's testimony will inevitably be irrelevant. The Court cannot simply accept Defendants' representations regarding the issues and elements being contested. At the discovery stage, "relevancy" is construed broadly. *United States ex rel. Shamesh v. CA, Inc.*, 314 F.R.D. 1, 8 (D.D.C. 2016). Gazvoda has demonstrated that the information sought falls within that broad scope. Furthermore, Defendants have not demonstrated that conducting the deposition will result in undue burden. This deposition is to be held in Northern Michigan. Government counsel is based in Detroit, Michigan. Although Government counsel may have to spend several hours traveling to the deposition, that burden is outweighed by the potential for relevant information.

When the motion for a protective order was filed, only Dr. Haskin's deposition had been scheduled. However, Defendants also seek to preclude the anticipated depositions of Drs. Barger and Swabash. The parties give little indication about what role these doctors play in the sequence of events at issue in Gazvoda's suit. However, Defendants indicate that reports by these doctors were included in Gazvoda's application to Defendants seeking a reassignment. Because Dr. Barger and Dr. Swabash also apparently evaluated Gazvoda, depositions of those doctors are likely to reveal relevant information for the same reason Dr. Haskin's deposition likely will. Accordingly, a protective order would be inappropriate at this stage.

**B.**

Finally, Defendants seek to preclude Gazvoda from deposing Dr. Lemmen. According to Defendants, Dr. Lemmen "performed a psychiatric evaluation as part of Plaintiff's Fitness for Duty Examination." Def. Reply Br. at 6. Plaintiffs seek to depose Dr. Lemmen to "'ensure that the Government's interpretation of his medical opinion is correct.'" *Id.* Defendants argue that this kind of testimony is irrelevant, citing *Pesterfield v. Tennessee Valley Auth.*, 941 F.2d 437, 442 (6th Cir. 1991). In *Pesterfield*, a physician testified in his deposition that the defendant had misinterpreted a letter on the issue of whether the plaintiff was ready to return to work. *Id.* The Court held that, even if defendant had misinterpreted the letter, the question was whether the defendant had relied upon the letter in good faith. *Id.* at 443. Rather than justifying a protective order, *Pesterfield* demonstrates the relevance of the testimony sought, for two reasons. First, the physician in *Pesterfield* actually *was* deposed. Thus, Defendants are again confusing the question of whether evidence will be sufficient for Gazvoda to prevail on the merits with the question of whether the evidence is relevant. Second, testimony about a medical opinion is relevant to the issue of whether an interpretation of that opinion is in good faith. Testimony by Dr. Lemmen

- 13 -

regarding what he found during his evaluation and what he wrote in his report will inform the analysis of whether that report was relied upon in good faith. Given the low standard for relevancy at this stage, Gazvoda will be permitted to depose Dr. Lemmen.

**IV.**

Accordingly, it is **ORDERED** that Defendants' motion for a protective order, ECF No. 52, is **DENIED.**

Dated: January 17, 2017        s/Thomas L. Ludington
                                                     THOMAS L. LUDINGTON
                                                     United States District Judge

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 17, 2017.

                                       s/Michael A. Sian
                                       MICHAEL A. SIAN, Case Manager